First case on our call, the docket for Wednesday, November 17th, 2010, 9.30 a.m. is agenda number 17, case number 109954, Lasalle Bank National Association v. Cypress Creek. Counsel? May it please the court, if this court upholds the decision of the third district appellate court in this case, it will completely reverse. Excuse me. Excuse me, your honor. Could you back up and just identify your name for the record? My name is John Anderson for the appellant, Lasalle Bank. If this court upholds the decision of the third district appellate court in this case, it will completely reverse the procedure for payment on construction loans in Illinois to the detriment of contractors, material men, and working people. Lasalle is here because this has not been the law of this state for 138 years, and it is bad public policy unless reversed. As this case comes before the court, the third district, Eden and Eagle, in seeking affirmance of the third district, and Lasalle agree on one basic point, and that is that subrogation as a principle does apply in a proportionality determination under section 16 of the Mechanics Lien Act. The crux of the issue between the parties and the reason for this appeal is whether subrogation as a principle applies only when a mortgagee or owner pays a recorded mechanics lien. That is the issue before the court. The third district decision in so ruling is a significant change in Illinois law. Before the third district decision, as this court has recognized, the well-established procedure in Illinois was that a contractor would submit a section 5 sworn affidavit. The contractors and subcontractors would submit lien waivers, and the contractors would promptly be paid the amounts due. Contractors relied on this procedure, material men relied on this procedure, owners relied on this procedure, lenders relied on this procedure, and title companies relied on this procedure in issuing policies of clear title. The principle was simple. Submit a waiver of lien, and the party would be paid promptly. The whole purpose was to keep title clear. That's what happened in this case. In this case, before the foreclosure was filed, the owner with proceeds from the construction loan from Lasalle included in that $1.5 million were payments of $122,000 to Eden, the carpentry contractor, and $155,000 to Eagle, the concrete contractor. They were paid without a recorded lien. Now they're coming into the court and saying that is not the way it should be. That for the Lasalle to be subrogated to those construction expenses, it should have required those contractors to first record a mechanics lien. Then the mechanics lien would have had to withstand the scrutiny of the bank before being paid. And in this case, which has been pending now for over five years, you can imagine that the lender would put those mechanics liens under the most intense scrutiny. Were they timely filed? Was the work done? Is the amount actually due? Was the legal description proper? Was the contract properly described? In mechanics lien law, there are a host of details that need to be examined to determine whether a mechanics lien is proper. Now the third district is saying that Eden and Eagle should have recorded a mechanics lien before being paid, and in that way Lasalle would have been subrogated in making the proportionality determination under Section 16. Under the third district opinion, this would inhibit prompt payment of contractors, as the liens are subject to scrutiny by the lender and the title company. It would be a disruption of the whole procedure for payment of construction loans in Illinois. The case law prior to the third district opinion is against what they have ruled. Starting with this court's decision in 1872 in Clark v. Moore, followed by Moulding Brownell, a first district decision in 1940, and then the Detroit Steel case by the fourth district in 1958, the courts have held that a mortgagee in a Section 16 proportionality determination will be subrogated for paying lienable material and expenses during the course of construction. Mr. Johnson, why should this court apply the equitable doctrine of subrogation to Lasalle's claims when the record is devoid of any indication that Lasalle attempted to have the rights to liens assigned to it by the remaining material men? And then you could have perfected your own mechanics lien. In the third district opinion, in the concurring opinion, Justice Schmidt referred to that concept, namely that the lender could simply take an assignment of the lien rights and in that case stand as a recorded lien. There are a number of reasons why that is not practical here and does not follow the law. First, Section 16 and its predecessor sections speak in terms of a lien creditor. There's nothing there requiring a recorded lien. Second, the case law does not require a recorded lien. And taking an assignment of the lien would be problematic for any conscientious lender because then it would be in the impossible position of trying to determine how to file a proper lien. It would not control the information over the last day of work. The amount due. Was the work done properly? Who was the contractor with? And also, by taking an assignment and paying the contractor, the lender would, in effect, be obviating the need for a lien in the first place. The contractor would be paid and it would not take an assignment of any valid lien rights, namely the precondition for which is that amounts are owed. And so I don't think an assignment would be a solution to this situation. It would just simply raise a whole host of other obstacles in what otherwise is a clean procedure for payment of contractors promptly on a construction project. In the Clark-Moulding and Detroit cases, the courts unanimously come to the same conclusion with the same reasoning, even though they don't cite each other. And it's interesting. In each of the cases, the courts reason that the contractors who have recorded liens in the position of Eden Eagle should not obtain in the proportionality determination an unjust enrichment that would occur if they are given credit for payments made during the course of the project. That unjust enrichment is most apparent in this particular case, where the undisputed facts are that Eden and Eagle were paid over a quarter of a million dollars of that $1.5 million for which LaSalle should have been subrogated. That is their double recovery in the proportionality determination. They get credit not just for their liens, but under the third district opinion, they get credit for the full $1.5 million, including over a quarter of a million dollars that they've been paid. Those facts are undisputed. They were shown by the testimony of John Marino, which was cited both in the trial court decision and in both of the third district decisions. And the evidence supporting these figures, which I've given the court here, was contained in Eden Exhibits 3 and 4, which were pay draws 8 and 9, as well as LaSalle Exhibits 13 and 15, which are more complete copies of the full pay draws. That's an undisputed fact as it comes before the court, and that's just the type of unjust enrichment that Clark, Moulding, and Detroit speak against. That is why they invoked the doctrine not of conventional subrogation, such as is referred to in the concurring opinion of the third district, but the concept of equitable subrogation, a subrogation which takes place not necessarily to put the subrogor in a position of the subrogee, excuse me, subrogee in a position of subrogor, but rather to avoid the unjust enrichment that would occur here if in the proportionality determination Eden and Eagle get credit twice, once as part of the 5.5 million and a second time where they receive their actual cash payments as part of that 1.5 million. Plus in Clark, Moulding, and Detroit, none of the cases refer to the fact that a recorded lien was filed and that a recorded lien should be a precondition for application of equitable subrogation. You won't find that in any of the discussions of those three cases. Rather, they base their decision just upon the concept of unjust enrichment and equitable subrogation. In addition to these three cases, in our briefs we cited several other cases which in a sense deal with a limited aspect of Section 16, but support the same result. Albrecht, commercial mortgage, and others each stand for the proposition that under Section 16, when a mechanic's lien, when you're deciding what proportion should be accorded to the mechanic's lien, the mechanic's lien is only entitled to the value of the improvements represented by their lien. That particular increment of, to use the language in Section 16, the entire building erected. Under Section 16, the mechanic's lien claimant is not entitled to the value of all improvements or the value of the building erected, but rather is entitled to the value of the improvements represented by the increment for which they filed the lien. In the case here, Eden filed the lien for $285,000, which was separate and apart from the $122,000 they were paid earlier. And with Eagle, the same thing. Their lien was for $63,000, which is separate and apart from the $155,000 they were paid earlier. Although the statute language here has changed since 1840, and we attach to our reply brief copies of the five statutes that have been enacted here. The statutes all speak together in the same respect, and that is they use the separate language of building erected and improvements. Again, the improvements is the increment represented by the lien, whereas the building erected is the entire improvement on the property. And the case law in applying these statutes, regardless of which statute it is, is unanimous and follows Clark, Moulding, and Detroit. The third district here should be reversed to maintain the orderly system for prompt payment of contractors, to maintain 138 years of case law in this state, which has been relied upon in construction loans and construction funding, and to fulfill the statutory and public policy that contractors should be promptly paid. Do Eden and Eagle have a valid argument that out of this $1.557 million that's in dispute, which was paid out by the bank, that that was paid to non-lienable creditors, legal fees, other fees that would not enhance the value of the property? No, they do not. And here's the reason. When you look at Draw 8, which was the last draw paid, it was Eden Exhibit 3 and LaSalle Exhibit 13, it will show that LaSalle paid $2.8 million on this project. And when we went to trial, we took out all the soft costs, such as you've just referred to, lawyer costs, other development costs, and included in the $1.557 million only construction costs, only lienable expenses and materials. We did not include expenses that were not lienable, only lienable expenses. And that's why I think they are wrong in making that argument. Mr. Maryknoll testified at trial at pages 163 to 169 of the September 17th hearing that these expenses were paid and identified the $1.557 million. That was covered in Judge Petrangero in the trial court's opinion, and she found that they were lienable expenses. That was not contested by Eden and Eagle on the appeal, and the third district in both opinions referenced the $1.557 million as lienable expenses and not including items such as Your Honor has mentioned, which would obviously be darned lienable. If there are no other questions, I'd like to reserve the balance of my time for rebuttal. Thank you. Thank you, Mr. Anderson. Counsel? Mr. Chief Justice, Justices, Counsel, good morning. My name is Richard Jones, and I represent Eden Construction Company. Eden was the carpentry contractor which was hired to provide carpentry labor and materials for the construction of improvements in the Cypress Creek project. Pursuant to its contract with the owner, Eden proceeded to provide those labor and materials. There were eight draws that were funded by LaSalle. Eden continued to work. Draw number nine was submitted. LaSalle refused to fund draw number nine. The result was that Eden ended up being owed $285,000 and filed its mechanics lien claim. This matter is before this Court on the issue of subrogation. The issue is whether a construction lender is entitled to elevate its position through the doctrine of subrogation to the position of a perfected mechanics lien claimant merely by dispersing construction loan proceeds. Mr. Anderson has made a lot of the issue of lienable versus non-lienable. In this context, it's really irrelevant because the Mechanics Lien Act imposes very strict requirements upon a lien claimant to perfect its mechanics lien claim. In the trial court, we were required to prove perfection, which entailed serving a notice within 90 days after completion of work, recording a claim for lien within four months after completion of work, and filing suit within two years after completion of work. Once we established that we perfected our lien, we were also required to establish enhancement. The enhancement was established by virtue of the testimony of several experts during a three-day-long trial. The trial court in this case found that because this project was defunct, because LaSalle stopped funding the construction draws, and because only part of the project was completed, proof of enhancement in this case was impossible. The trial court then relied upon the appellate court decision in Lien Savings versus Gash Associates and held that where it is impossible to establish the incremental increase in the value of the project by virtue of the work performed, that the court should use the contract as the basis for enhancement. Thus far, the trial court was correct. But then the trial court went on to subrogate LaSalle to a position equivalent to Eden and Eagle as perfected mechanics lien claimants for construction disbursements pursuant to a mortgage. Now, subrogation is an equitable doctrine, and it entails one party being placed in the position of another party for the purpose of enforcing a lawful right. But the term is, it's very important that that party that is subrogated step into the shoes of the other party. LaSalle here seems to want to not step into the shoes of another party, but to step up the stairs and be elevated to a status that that party would not have had. LaSalle merely dispersed construction proceeds, and its protection is its mortgage. Now, in this... Counsel, unjust enrichment is another equitable doctrine, right? Yes, sir. And tell me where Justice Carter and his dissent went wrong. I know you disagree with it, so tell me exactly where he went wrong. He says, and by the way, with respect to unjust enrichment, I think this probably capsulizes the argument we just heard from opposing counsel. So, in my opinion, Mrs. Carter, an application of the decision of Clark, Steele, and Steele requires that LaSalle be allowed to recover the development expenses it paid. No lien existed as to those expenses because LaSalle paid them off. Had LaSalle not done so, the providers of those services would have filed lien claims, and Eden and Eagle would be required to share their proceeds with those claimants. Thus, Eden and Eagle are receiving an unjust enrichment. Where did he go wrong? First, LaSalle is protected by its mortgage. In a construction project, a mortgagee has the ultimate status of power. The mortgagee has a recorded mortgage, and any disbursements on that construction loan are automatically included as a prior lien on the property. Any lien claimant that wants to establish a priority over that mortgage has to satisfy the requirements of the Mechanics Lien Act, has to prove perfection and enhancement. LaSalle, by dispersing its loan proceeds, became what they referred to in the Mechanics Lien Act as an encumbrancer. As a lien creditor, in order for us to establish a priority over an encumbrancer, we have to perform the acts that are required under the act in order for us to establish that priority, and that is to prove perfection and enhancement. Now, LaSalle was secured by its mortgage. It foreclosed its mortgage. It filed its lawsuit as a mortgagee. But suddenly when it came to the allocation of proceeds from the sale, LaSalle abandoned its mortgage and decided it wanted to be a lien claimant. Well, if LaSalle wants to be a lien claimant, LaSalle has to do what we did. We spent three days on trial proving our lien claim. LaSalle did not. LaSalle merely dispersed loan proceeds. Now, whether these loan proceeds were lienable or not, the liens that may have been represented by all or any portion of those loan proceeds were never perfected. There was never any evidence in the trial court that any of these items were lienable and certainly no evidence that any of these items were perfected, with the exception of the basic lien. So it's your position that you would not have to share proceeds with claimants that did not have perfected liens? Correct. And we don't. The trial court rendered a final decision as to all those lien claimants who did prove perfection and enhancement and allocated the proceeds accordingly. But where the trial court erred was the trial court then subrogated LaSalle to the position equivalent to a lien claimant, elevated it to that status in connection with the disbursement of construction of the sheriff's sale proceeds, without any proof whatsoever that LaSalle had performed any of the requirements that all of the other lien claimants were required to perform. Eden and Eagle both perfected their mechanics lien claims, proved perfection, proved enhancement. And that's what we were required to do in order to establish a priority over LaSalle. In practicality, would that require that the bank, before they disperse any reimbursement to any contractor, there would have to be a perfected lien filed against that land? Well, as a practical matter, Your Honor, what happens in the construction industry is that there is a construction escrow. That construction escrow is one established with a third party, generally a title company. The construction proceeds are dispersed into that construction escrow, and the money is not dispersed until the contractors perform the work and provide lien waivers. So in this case, LaSalle could easily have protected itself by having a construction escrow established. Instead, LaSalle allowed Eden and Eagle to go out and perform work in the project, didn't fund that work, and then refused to pay us for the work that we had performed. Who paid you the first draws? LaSalle dispersed the first eight draws but refused to fund draw number nine. We don't dispute the fact that we were paid in part on our contract. And did you provide lien waivers for those amounts? Yes, but we have not provided lien waivers for the balance simply because we haven't been paid. We would have had we been paid. Now, if LaSalle were to have yesterday offered to pay Eden the amount of its lien, LaSalle would be here today sitting in that chair, not in that chair, because they would be entitled to subrogation to the position of a lien claimant because Eden did perfect its lien, Eden did approve enhancement, and Eden established all of the elements required by the Mechanics' Lien Act. Instead, LaSalle is saying, no, we're not going to pay you. We're going to take the position that under the doctrine of subrogation, we are entitled to assume the same rights that you have as a lien claimant. And I respectfully submit that that is unfair. Subrogation is an equitable doctrine and should be applied equitably. The majority decision in the appellate court reversed a trial court decision, and the appellate court is correct and should be affirmed by this court. Now, unless this court has other questions of me, I would like to leave the remaining time for Mr. Graviscus, who represents EO Concrete. Thank you. If it pleases the Court, my name is Paul Graviscus. I represent EO Concrete, who is a contractor, an original contractor, actually, on this case. The point I want to make is directed towards the statute. The Mechanics' Lien Act is a broad statute. It's a comprehensive statute with respect to how it treats subrogation. It treats mechanics' lien claimants. It also is comprehensive with respect to how a mortgagee should be treated with respect to third-party rights. The statute defines who a contractor is. It defines what work is lienable. It defines and tells you what notices are required, what filings are required, and more importantly, I think it describes what is required in the lien document itself. The statute is remedial in nature, but it requires strict construction in order to bring yourself within the purview of that statute. And it's strictly construed against mechanics' lien claimants, and I think it should be strictly construed against a mortgagee in these circumstances. If a mechanics' lien claimant does not properly give notice, if a mechanics' lien claimant does not properly file its lien claim, it has no lien at all. None. It is a contractor and a contractor only. There is no equitable right to a lien under the Mechanics' Lien Act for a mechanics' lien claimant. Section 16 of the statute talks about lien creditors. It doesn't talk about contractors. It talks about lien creditors. These are entities or persons that have brought themselves within the purview of the statute. It entitles them to a lien, and they have a lien, and it is only those people who comply with the statute who have a lien status under the Act. If you do not bring yourself under the Act, you are a contractor only, and you have no rights. Your only right is to sue the person that you had a contract with. What LaSalle has tried to do is they've tried to create this impression that they, as they made these payments on their mortgage obligations to the owner, they are trying to claim that their payment to contractors, who at that time were not lien creditors, not lien creditors, that they have the right to a lien status. They do not. The law, I believe, is clear in that, as Mr. Jones mentioned, the subrogee steps into the shoes of the subrogor. So are you saying that the payments that LaSalle made to Edon and Eagle were not payments to lien creditors, those earlier draws prior to number nine? Correct. Not at the time that those earlier payments were made, just as none of the other payments to any other contractor was to a lien creditor. How do you respond to Mr. Anderson's argument that, I don't know if it's unjust enrichment or double enhancement or double recovery, but by reason of the fact that those payments were made and those were made for improvements made to the property, Edon and Eagle would now get a disproportionate share of the proceeds out of this $1.5 million? It goes back to my original statements that the statute requires strict construction. Until those contractors file lien claims, they are payments to contractors only and it gives LaSalle no better status than if it paid anybody else on a project. It gives them no better status than the development costs, interest and things like that, than it paid itself. But I would also, more importantly, rely directly on Section 16. Because Section 16 talks about payments to lien creditors. It doesn't talk about payments to contractors. And what it sets up, Section 16 is really, as it relates to priorities, is in two segments. The first segment of the, which is in the first few lines of the statute, that talks about the mortgagee having the right to be preferred to the value of the land. In fact, what it says is that no mortgage or no encumbrance is effective as to the building erected until the lien creditors are paid. That's what it says. Are we somewhat, going back to Justice Carmoner's question, are we somewhat skirting the issue, though? Because we're dealing with the equitable principle of unjust enrichment. And to answer the question with respect to unjust enrichment, the answer always goes back to the statute and the statutory requirements. Do we have a direct answer as to, I don't think we do, a direct answer as to whether EGLE and Eden have been unjustly enriched in this case? I mean, we're going around it with equitable, and then we're saying, what are the practical effects? And I think we'd like an answer to that question. That kind of gets to this notion of assignment of the claim. And as I said, the statute is a comprehensive statute. It provides for assignment of a claim before or after the making of the claim, before or after the filing of a lien claim. It is not because mechanics lien claims don't have equitable relief. It's not unjust or inequitable that LaSalle be held to the statute the same as a mechanics lien claimant would be held to the statute. The statute is comprehensive. It allows an entity, including a lender, to get the rights of a mechanics lien creditor if it wants to do that. It has to jump through a few steps. It's not as difficult as Mr. Anderson would have us believe, because notice under Section 5 is fulfilled by virtue of the contractor's sworn statement. The bank knows who those people are. They know who are being paid. As they make those payments, they can take an assignment. They don't have to file any lien claim at any time until they usually decide not to fund further draws. They can at that time file their lien claims if they think that it's important for them to do, which I would assume they would think that, but we don't know that. So it's not all that difficult for them to comply with the statute. And as I say, the statute is comprehensive. It allows them to get these lien rights, and if they choose not to do that, they don't have to, and they didn't in this case. This also becomes important with respect to proof of mechanics liens, because under Section 9 a mechanics lien claimant has the right to contest the claims of other mechanics lien claimants. If LaSalle is to get credit for payments made a year earlier as a mechanics lien claimant, that burden is impossible on a mechanics lien claimant in a litigation a year later, because they presumably, if they're going to claim this lien creditor status, they have to show that their lien was filed on time, that the work was lienable work, the contract enhanced the value of the property. They would, under their theory, be relieved of any obligation to prove what they have to do in order to become a lien creditor. All that they did was they paid a contractor. They did not pay a lien creditor, and they should not be treated as a lien creditor. Is there any difference, or maybe it's my understanding of the law, that a person, a material man or a contractor that supplies work has a lien for the value of his services or materials supplied, but it's not perfected until such time as they file a lien. Is that correct? That's correct. In this case, you're saying that these people, you're not calling them lien creditors because they not perfected their liens. However, had the bank not paid Eden or others without the necessity of filing a lien, they're not entitled to, had they not paid, you would be in a worse position than you are now. I believe that goes back to Section 16 of the statute, which says that, which our position, my position is, and I think it's accurate, is that the lien creditors are preferred to the value of the enhancement on the property, preferred to the value that we're entitled to. And the statute says lien creditors. It doesn't say contractors, which is what LaSalle wants to do. They want to be preferred as a lien creditor when all they did was pay contractors. And I would try to draw this analysis. LaSalle, my time is up. Thank you very much. Appreciate it. Section 16 does not require payment of a recorded lien for a party in the position of LaSalle to be subjugated. The case law does not require it. Justice Carter did not go wrong in his dissent. He followed the law as it's been in this state for 138 years. Eden argues that LaSalle had to prove its lien claim. That's not correct. LaSalle had to prove as it did that that $1.557 million in expenses paid on this project were lienable expenses. That includes the construction work by Eden, carpentry work for $122,000, and the concrete work by Eagle for $255,000. That evidence was uncontested at trial and, as I said before, was reported in the trial court's decision and in both the third district decisions. That work was lienable. The balance of the $2.8 million paid by LaSalle on the project was not lienable, and LaSalle was never sought subrogation for those items. Those are typical soft costs on a construction project such as your Honor noted legal expenses. Eden made the point that LaSalle could have protected itself with a construction escrow. There was a construction escrow on this project. It was Eden Exhibit 1 at the trial, and as I explained in my opening comments, it required what is standard procedure in a construction loan in Illinois. It required a sworn statement. It required lien waivers. Then the escrow was funded and the contractors were paid, just like Eden and Eagle were paid over a quarter of a million dollars as part of that $1.557. Eagle made the argument that the mechanics lien law should be strictly construed. There is case law making those statements, and those are in reference to the technical requirements of perfecting a lien. Section 39 of the Mechanics Lien Act says, this act is and shall be liberally construed as a remedial act. That is the concept that Clark, Moulding, and Detroit apply in saying that a party in the position of LaSalle as mortgagee should be subrogated. Section 16 refers to lien creditors. It does not say lien claimants would record a mechanic lien. Lien creditors, as we explained in our brief, can easily mean the inchoate lien that arises for any contractor on the date it signs a contract with the owner. At that date, the law is unanimous. The inchoate lien arises for the contractor, who then must perfect it if it later seeks to enforce it. But there is no requirement in the case law for the subrogation that LaSalle be to pay a recorded mechanics lien. Justice Thomas, you asked a question about unjust enrichment. And in Detroit, at page 521, the court said, to deny subrogation would be to grant an unearned enrichment to Gaskins, who was the lien claimant in that case in the position of Eden Eagle here, by the reduction of outstanding claims. In Detroit, Gaskins was attempting to assert a $9,000 lien. The mortgagee had required the owner to pay 2,900 in lienable expenses before the mortgage loan was made and was seeking to be subrogated to the $2,900 in lienable expenses. The court held that it would have been unjust enrichment to give the parties in the position of Eagle and Eden credit in that proportionality determination for the $2,900 in improvements that the owner had paid. And the example of what happens here is on the proportionality determination. If you do what the third district has said on the Eden Eagle side of the proportionality determination, Eden will have its lien for $285,000 plus Eagle's lien for $63,000 plus the value of all the improvements, $1.557, that will be on their side of the proportionality determination for the value of the improvements, which the trial court here felt were $2 million. On the other bank side, there would only be the basic lien of $30,202 which was paid. So the lien creditors here, or the lien claimants, Eden and Eagle, would get almost $1.9 million on their side of the proportionality determination and the bank would have $30,000. And the case law is unanimous in saying that gives the lien creditors an unjust enrichment in the proportionality determination. They're getting credit for the $1.557, which is the value of all the improvements on the project. And that is the unjust enrichment. It's especially apparent on the facts of this case where the $1.557 includes over a quarter million already paid to Eden and Eagle. It's your position the case law doesn't require perfected liens. Yes, Your Honor. If you read carefully on the parts where they deal with subrogation, Detroit at page 521, Clark v. Moore on the last page, and Moulding at the end of the case, there's no reference in any of these three cases, or any of the other cases cited, that a recorded lien is a requirement for subrogation. Rather, as I read from Detroit, the subrogation is a function of avoiding the unjust enrichment which would occur if the lien claimant's in the position of Eden and Eagle when their proportionality determination is done, get credit for the $1.557. And then as I said here, it's especially apparent where they are, as part of that $1.557, they were paid over a quarter of a million dollars. Clark v. Moore says the same thing on the last page of the decision. It has always been recognized the true rule to hold all improvements placed by the mortgager on the premises as being embraced in and subject to the mortgage. We cannot suppose that they were intended when made to be for the benefit of the lien holders. What they're saying is that $1.557 should not be on the lien claimant's side of the proportionality determination. It should be on the mortgagee's side. What practical effect does the third district's decision have on the construction loan industry? If it's followed, an irrational lender would have to follow it. And the reason is if you have a project that's a large project, such as a major construction project in downtown Chicago, where a lender has paid out $150 million for construction costs, and at the end there's a couple liens for a couple million dollars, and you go to that proportionality determination, the lien claimants would receive the credit for that $150 million on their side of the proportionality determination instead of the lender. And so the lender would have to require that every payment it makes be first supported by a mechanics lien. And then in looking at this case, the lender would have to realize that before it paid that mechanics lien, it better make sure it's a good one, because look what's happened here. Five years of litigation over these liens. And so if you're a rational lender, you're going to put those liens under a microscope before you pay them. And that's just going to have the effect of delaying payment to contractors. When the existing system does exactly the opposite. They submit the lien waiver, they're promptly paid, and everybody moves on. It would be a disaster for the lending industry. It would be a disaster for the construction industry. It would be a disaster for contractors, especially small contractors, who don't have people on staff that do liens regularly and are aware of all the technical requirements. It would be a tremendous burden on the state of Illinois. Liens should be a last resort on a construction project, not a requirement for payment. The existing procedure works well. It has worked for 138 years. Contractors, material men, lenders, owners, title companies have all relied upon the law of this state as it has been in existence for 138 years. The whole system is set up to function that way. It's fair in the proportionality determination. It's a function of equity, and that's why it's been in the statute. Excuse me, Your Honor, my time is up. Thank you. Thank you. Case number 109954, LaSalle Bank National Association v. Cypress, et al.